### Terrill's Adm'r v. Davis.

January 21, 1947.

Krieger & Huffaker for appellant.

Brown and Eldred for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Hedgeman C. Terrill was injured in an automobile

accident on the night of December 29, 1944, and taken to a hospital where he died the following morning. Immediately thereafter his brother Irvin Terrill called appellee, an Owensboro undertaker, and requested him to come to Louisville and remove the remains to Owensboro for burial. Davis complied; prepared the body for burial and later conducted the funeral, the brother going to Owensboro, selecting the casket and giving general directions as to the conduct of the funeral.

The Liberty Bank and Trust Company qualified as administrator; Davis filed his claim which was not paid, and later the administrator filed suit seeking settlement, and calling upon Davis to set up his claim, which was itemized as follows: "Services, including casket, $1500; concrete vault, $75.00; removing remains from Louisville, $25.00, total $1600.

The matter was referred to the commissioner, and in his report he stated that the estranged wife of deceased did not visit him, nor make any arrangement for his funeral, a task taken over by the brother. He found from the proof that the brother came to Louisville; took charge of the body and made arrangements for claimant to come to Louisville and take the body to Owensboro, and where the brother contracted with claimant for a funeral to cost $1600. The commissioner was in some doubt as to whether this was proper, due to the fact that decedent had been previously married and had one child, a daughter, though at the time a minor. He remarked that under the proof the value of the services rendered by the plaintiff could hardly be questioned, and that the only doubtful point was whether there is justification for the brother, in an estate of this size, to contract for such a funeral bill, but that since Davis rendered the service under a contract he should be allowed his claim.

The issue was raised by these exceptions to the report: (1) Claimant was not employed by one having authority to bind the estate. (2) That the services contracted for and rendered were in conflict with the written request of the deceased, of which fact claimant had knowledge, and lastly that the charges for service, casket, vault, &c., were excessive.

Davis filed response and set up facts with relation to

the contract made by the brother, rendition of services, &c., and denied the conclusion that the charges were excessive; or that he knew deceased had left a request as to the manner of disposition of his remains. The chancellor confirmed the report and directed judgment for Davis. Administrator on appeal reiterates the above reasons in contention that the claim should be denied or scaled downward.

There is disagreement as to the facts. Aside from those stated the record shows that deceased had been for a long time a pharmacist in one of Louisville's drug stores. He had been twice married and was divorced from his first wife, Grace. Of this marriage there was a daughter, who at the time of his death was around nineteen years of age, and apparently lived with the mother. A second marriage resulted in an estrangement, and at the time of the injury a divorce suit, instituted by the wife, was pending.

There is exhibited a paper manifestly intended as a will. In this there were bequests to a church, the College of Pharmacy, and a few other special bequests. To his daughter, of whom deceased was apparently very fond, he made a fair-sized cash bequest. There was no residuary clause. This paper, dated August 1944, was typed and signed, but not witnessed. There are only two clauses which need mention; one was the 7th clause, reading: "My body is to be cremated and ashes thrown to the wind." That he had no kind feeling for either of the wives may be shown by the codicil, which said: "Dolly you know what you Grace and Zora Lee have done to my life." In a preliminary report made by the administrator it was shown that the net estate was over $16,000, the greater portion of which was represented by insurance payable to the estate. There were no appreciable debts.

The claim that the estate should not be bound is based on the fact that at the time of Terrill's death his widow and a daughter were living and it was their right to contract for the expenses of burial, and that the brother was a volunteer and without power to contract so as to bind the estate. We cannot conceive that under the circumstances the brother was a volunteer, in the sense that he took upon himself a duty or right that devolved

upon some one else. The facts were that as soon as the brother heard of the accident he and his father came to the hospital and remained until his death. They returned to Owensboro, the brother to the Davis establishment where he himself selected the casket, an ornate, copper lined one, the best in stock, and was told it and the services would cost $1600. He made arrangements for the funeral services. He frankly said that he had obtained the exhibited paper and he and his father discussed clause 7, and concluded that a customary burial would be more satisfactory. The claimant says he knew nothing of the request, nor did he know anything of the domestic situation.

The brother testified that he called the divorced wife and asked if she had any suggestions as to burial arrangements, and also agreed to take her and the daughter to Owensboro for the services. She had no suggestions, and showed no interest in the invitation to go to Owensboro, saying that the daughter was not well. He did not get in touch with the widow because he said he knew of the estrangement and believed that a divorce had been granted. None of the three visited the hospital, and the brother says he had information that the widow had been apprised of the accident. None of them testified at the hearing, nor is there anything shown to indicate that they, or any of them, would have acted otherwise under the circumstances than was done by the brother.

It cannot be held that the brother was in any sense an interloper. He was faced with a situation which demanded prompt action. We cannot conceive that it would have been possible to have called all parties mentioned together to reach an agreement. What we said in the case of Colovos, Adm'r, v. Gouvas, 269 Ky. 752, 108 S. W. 2d 820, 113 A. L. R. 871, is applicable here. A person is entitled to a Christian burial, and it cannot be delayed to determine upon whom the legal obligation to proceed with the burial rests most heavily, nor should the undertaker be compelled to await an adjustment of any dispute that might arise. As far as the record discloses the brother acted within respectable rights in taking charge.

The facts that the brother and father, who were not

versed in the matter of cremation, and that several others of the family had been buried in the usual manner by claimant, were sufficient reasons for not carrying out the unexecuted request of the deceased brother; in any event, the failure to do so cannot be charged against claimant. There can be little doubt but had the brother paid the funeral expenses, he would have had the right to recover out of assets in the hands of the administrator the reasonable cost of the burial. Lay v. Lay, 201 Ky. 93, 255 S. W. 1054; Preston v. Preston's Adm'x, 245 Ky. 552, 53 S. W. 2d 957, though it may be doubted, as was expressed by the commissioner, that taking into consideration the extent of the estate, the brother was justified in contracting for a funeral which took from the estate ten per cent of the total, and this might have become a debatable question if the issue was between the brother and those entitled to the proceeds of the estate. Fitzpatrick's Adm'r v. Fitzpatrick, 288 Ky. 53, 155 S. W. 2d 463.

The question of excessiveness of the charges was considered by the commissioner and his finding was approved by the chancellor. Both concluded that since there was a selection and other arrangements made by the brother, with knowledge of the cost, the claimant should recover on the contract. Appellant contends that the claim is excessive because the cost of the burial (casket, vault and embalming), "was only the sum of $496." If no other items than those mentioned are to be considered, we would be strongly inclined to adopt the phrase used by the court in Burgess & Walter v. Thomas' Adm'r, 219 Ky. 399, 292 S. W. 1085, where there was shown a profit of 200 per cent on the "furnishings," that "This, at first blush, strikes the mind as unreasonable and unjust," there upholding the findings of the chancellor, who reduced the claim by $500. Whether the extent of the estate was shown to the court is not developed, nor is it shown that there was a contract for the specific "furnishings" and service. In that case we approved a charge of $1,493 for total expenses, without any showing of a contract for what was selected by one, or of circumstances sufficient to uphold the claim against assets in the hands of the administrator.

Our conclusion makes it unnecessary to go into de-

tails as to the cost to Davis of the casket (sold at O. P. A. ceiling price) and vault. The proof shows more clearly than in any case we have had before us, or had occasion to examine, that it is customary to charge under the item "services" a percentage of the general overhead, such as salaries, wages, rents, automobiles, light, water, fuel, office and other necessary supplies to each funeral. This custom was shown, by reliable persons engaged in the undertaking business, to prevail and to be necessary to make a reasonable profit, which applied here brought the net profit to the claimant to about 20 per cent. There was no contradictory proof offered. As the case is presented, we find no valid reason why we should not follow the finding of the commissioner and chancellor.

Judgment affirmed.